354 So.2d 718 (1978)
Robin F. GEDDIE
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY.
No. 8706.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
Rehearing Denied February 14, 1978.
Writ Refused March 31, 1978.
*719 Garon, Brener & McNeely, Jacques F. Bezou, New Orleans, for plaintiff-appellee.
Dodge, Friend, Wilson & Spedale, Gordon F. Wilson, Jr., Denis Paul Juge, New Orleans, for defendant-appellant.
Before GULOTTA, BEER and BOWES, JJ.
GULOTTA, Judge.
In this legal malpractice suit, defendant-insurer appeals from a judgment in favor of Robin Geddie for damages arising from his unlawful confinement in the penitentiary under a four-year sentence for a crime which had a maximum penalty of two years. The liability of defendant's insured, who took no steps to have the sentence reduced, is not at issue. By stipulation, the sole issues before us are the trial judge's method of calculating the term of excessive incarceration and the quantum of his award. We reduce the award and affirm the judgment as amended.
Geddie began serving a four-year sentence on October 10, 1973, and remained in custody of the Department of Corrections for a period of 19 months until he was paroled from the State Penitentiary at Angola on May 9, 1975. The following chronology is helpful.
October 10, 1973 Plaintiff incarcerated and
 begins serving four-year
 term at Angola.
December 17, 1973 Plaintiff sent to maintenance
 program at Jackson
 Barracks.
March 13, 1974 For disciplinary reasons,
 plaintiff returned to Angola.
June 10, 1974 Earliest possible parole date
 under a two-year sentence.
September 4, 1974 Plaintiff sent to Camp
 Beauregard work release
 program.
September 10, 1974 Two-year sentence parole
 date plus three months.
 (Judge uses this date as the
 beginning of the period of
 illegal confinement.)
November 12, 1974 Good time release date under
 a two-year sentence.
November 18, 1974 Plaintiff returned to Angola
 from Camp Beauregard for
 misconduct in connection
 with work release program.
December 16, 1974 Two-year good time release
 date plus 34 days in
 lost good time.
February 10, 1975 Earliest possible parole date
 under a four-year sentence.
 (Geddie was denied parole on
 this date.)
May 9, 1975 Four-year sentence parole
 date plus three months.
 (Geddie released at this
 time.)
In oral reasons, the trial judge concluded that as a result of his defense attorney's negligence Geddie had been illegally confined for a period of 8 months from September 10, 1974 until May 9, 1975. In calculating this time period, the trial judge concluded that under a two-year sentence, Geddie would, in all probability, have been denied parole at the June 10, 1974 date, but would have been granted it 3 months thereafter on September 10, 1974. The judge reasoned that Geddie had been delayed parole for a period of 3 months under the four-year term due to misconduct on the *720 work release program at Camp Beauregard and that disciplinary problems during his confinement at Jackson Barracks in the early part of his incarceration would have had a similar effect and would have delayed his parole for 3 months under a two-year term. The trial judge, in effect, based an award on illegal confinement from parole date and 3 months (for a two-year sentence) to parole date and 3 months (for a four-year sentence).
According to the trial judge, during the eight-month period of illegal confinement, Geddie was incarcerated for 2 months at Camp Beauregard, a minimum security facility, and for the remaining 6 months at Angola. Damages were awarded in the sum of $7,000.00 per month for each month spent by plaintiff at Angola (where conditions were poor) and $1,500.00 per month for each month spent at Camp Beauregard (where the atmosphere was more bearable).
The thrust of defendant's appeal is that the trial judge erred in arriving at an eight-month period of illegal confinement based on a comparison of a two-year parole date plus 3 months with a four-year parole date plus 3 months. According to defendant, the illegal confinement should be calculated at a two-month period, based on a comparison of the good time release date under a two-year sentence plus 34 days of lost good time days (December 16, 1974) with the earliest parole date (February 10, 1975). Defendant points out that although plaintiff was paroled on May 9, 1975, 3 months after his earliest four-year parole date, this three-month delay was caused by plaintiff's own misconduct. It is defendant's argument that the trial judge's approach is based on speculation that Geddie, under a two-year sentence, would have been paroled 3 months after his first eligible parole date under that sentence. Defendant argues, instead, that its own approach is based on the certainty of computation for good time release as set forth in LSA-R.S. 15:571.3 and 15:571.4. We find no merit to defendant's argument in this respect.
We cannot say the method used to determine the time of illegal confinement based on parole dates under the two-year and four-year sentences is unreasonable. Plaintiff was, in fact, paroled 3 months after his first eligible parole date under the four-year sentence. The three-month delay was occasioned by his misconduct in the work release program at Camp Beauregard. Because he was returned to Angola from a work maintenance program at Jackson Barracks for disciplinary reasons during the first few months of his legal confinement, a reasonable conclusion may be reached that plaintiff would have been released 3 months following his first eligible date for parole had he been serving a two-year sentence.
We do find merit, however, to defendant's argument that the award of $7,000.00 per month for each month served by plaintiff at Angola is excessive. Based on the trial judge's calculation, plaintiff's illegal confinement began on September 10, 1974, at which time he was confined at Camp Beauregard, a minimum security facility. The deposition of Fred Villali, supervisor of the work release program at Camp Beauregard, indicates that Geddie's violation of the conditions of the work release program resulted in his transfer to the Angola Penitentiary. This evidence clearly shows that but for his own misconduct Geddie could have served the entire duration of his illegal confinement under the less oppressive circumstances of Camp Beauregard. Furthermore, Colonel Franklin Woodruff, work release officer and maintenance supervisor at Jackson Barracks at the time of Geddie's confinement, testified that plaintiff could have remained at Jackson Barracks and participated in the maintenance program or work release program there for the duration of his prison sentence. For disciplinary reasons, however, Geddie was returned to Angola on March 13, 1974, approximately 3 months after having been transferred to Jackson Barracks on December 17, 1973.
Clearly, the Angola confinement was attributable to plaintiff's own misconduct and, therefore, any award for each *721 month of illegal confinement should be based on a consideration of plaintiff's incarceration at a minimum security facility such as Camp Beauregard or Jackson Barracks. Otherwise, an award based on confinement at Angola, under the circumstances, for the illegal period would have the illogical result of rewarding plaintiff for his own misbehavior. We conclude, therefore, that the trial judge erroneously awarded the sum of $7,000.00 per month for a six-month period of illegal confinement (while at Angola) in addition to the $1,500.00 per month award while plaintiff was incarcerated under the work release program.
Consistent with the above, we reduce the amount of the award to $1,500.00 per month for each month that plaintiff was illegally incarcerated, based on confinement under the work release program where plaintiff would have remained during his illegal incarceration, but for his own misconduct while confined. Accordingly, the judgment is amended to reduce the award in favor of plaintiff from $45,000.00 to $12,000.00. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.